**Velerk MARSHALL and Lucinda Caruther by her next friend, Lucille Caruther, Plaintiffs,**

v.

**HOUSING AUTHORITY OF the CITY OF TAYLOR and Ina Sanders in her official capacity as Director of the Housing Authority of the City of Taylor, Defendants.**

**No. A–91–CA–856–SC.**

United States District Court,
W.D. Texas,
Austin Division.

Aug. 23, 1994.

Fred Fuchs, Legal Aid of Cent. Texas, Austin, TX, for plaintiffs.

Stephen Greenberg, Mary K. Wolf, Small, Craig & Werkenthin, Austin, TX, for defendants.

## OPINION AND ORDER

CAPELLE, United States Magistrate Judge.

### I. INTRODUCTION

On November 6, 1991, Plaintiffs filed this action challenging the policy of the Housing Authority of the City of Taylor (hereinafter referred to as "THA") in rejecting the applications for public housing of families whose head of household is under eighteen years of age and who has not obtained a judicial determination of emancipation. The Plaintiffs' Motion for Partial Summary Judgment filed on February 21, 1992 and the Defendants' Cross–Motion for Summary Judgment filed on March 23, 1992 are now before the court.

The Plaintiffs assert as their causes of action against the Defendants: 1) violation of the U.S. Housing Act of 1937 (hereinafter referred to as the "Housing Act") by establishing additional eligibility requirements for public housing; 2) violation of the U.S. Department of Housing and Urban Development (hereinafter referred to as "HUD") regulations prohibiting categorical exclusions from public housing; 3) violation of federal regulations requiring consideration of individual circumstances; and 4) violation of due process and federal regulations requiring written tenant selection policies. The Plaintiffs request declaratory and injunctive relief for the Defendants' violations of Federal Public Housing statutes and regulations un-

der 42 U.S.C. § 1983. Jurisdiction is based upon 28 U.S.C. § 1331. The parties have consented under 28 U.S.C. § 636(c) to this Court's presiding over the case for all purposes including entering a final order and judgment.

■ After reviewing the federal statute and the HUD regulations and policies, we find that the THA's practice of requiring the head of family to be either of majority age or an emancipated minor does not violate the Housing Act or the HUD regulations. Thus, we grant Defendants' Motion for Summary Judgment. However, we do find that the THA should establish its policy in writing in accordance with HUD regulation 24 C.F.R. § 960.204(d).

## II. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides for summary judgment "if the pleading, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show the moving party to be entitled to summary judgment as a matter of law." Rule 56(e) states: "When a motion for summary judgment is made and supported as provided in this rule an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but must set forth specific facts showing there is a genuine issue for trial."

■ Both movants and non-movants bear burdens of proof in the summary judgment process. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant with the burden of proof at trial must establish every essential element of its claim or affirmative defense; however, if the issue is one on which the movant does not bear the burden of proof at trial, summary judgment is warranted if the non-movant fails to make a sufficient showing to establish the existence of each element essential to its case. *Id.* at 322–23, 106 S.Ct. at 2552. In so doing, the moving party without the burden of proof need only point to the absence of evidence on an essential element of the non-movant's claims or affirmative defenses. *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2554. At that point, the burden

shifts to the non-moving party to produce evidence in support of its claims or affirmative defenses by affidavits or by " 'depositions, answers to interrogatories and admissions on file,' [to] designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S.Ct. at 2553. The non-moving party must produce "specific facts" showing a genuine issue for trial, not mere general allegations. Fed.R.Civ.P. 56(e); *Gossett v. Du–Ra–Kel Corp.,* 569 F.2d 869, 872 (5th Cir.1978). The non-movant has failed to meet this standard if its response merely shows that "there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). If no such evidence is produced, "[t]he moving party is entitled to a judgment as a 'matter of law.' " *Id.* 477 U.S. at 323, 106 S.Ct. at 2552.

■ In deciding whether to grant summary judgment, the court should view the evidence in the light most favorable to the party opposing summary judgment and indulge all reasonable inferences in favor of that party. *Int'l Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1263 (5th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 936, 117 L.Ed.2d 107 (1992); *Burgos v. Southwestern Bell Telephone Co.,* 20 F.3d 633, 635 (5th Cir.1994).

■ The Court must substantively evaluate the evidence offered by the moving and non-moving parties to determine whether the evidence raises a "material" fact question which is "genuine." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A fact question is "material" if it involves "disputes over facts that might effect the outcome of the suit under the governing law." *Id.* at 248, 106 S.Ct. at 2510; *Burgos v. Southwestern Bell Telephone Co.,* 20 F.3d at 635. Thus, the focus of the Court is upon disputes over material facts.

■ The material fact dispute must be " 'genuine' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510. With all

reasonable doubts resolved against the movant, the court only decides whether a factual dispute exists and does not resolve the controversy. *Jones v. W. Geophysical Co. of America,* 669 F.2d 280, 283 (5th Cir.1982), *aff'd in part, modified in part on other grounds,* 761 F.2d 1158 (1985).

The Fifth Circuit has concluded " '[t]he standard of review is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the record evidence before the court.' " *James v. Sadler,* 909 F.2d 834, 837 (5th Cir.1990) (citing *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356).

### III.  BACKGROUND

#### A.  PROCEDURAL BACKGROUND

The Plaintiffs, Velerk Marshall and Lucinda Caruther by her next friend, Lucille Caruther, filed this action on November 6, 1991 on behalf of themselves and a proposed class, seeking declaratory and injunctive relief. The Plaintiffs' Motion for Class Certification was withdrawn on October 27, 1992. The Plaintiffs seek declaratory and injunctive relief requiring the THA to change its policy of denying applications for admission and placement on the waiting list for public housing solely on the basis that the head of household is an unemancipated minor. The Plaintiffs also seek reasonable damages and attorney's fees for the inconvenience they experienced as a result of THA's policy.

#### B.  FACTUAL BACKGROUND

The undisputed and stipulated facts necessary to determine the Plaintiffs' claims for declaratory and injunctive relief are as follows.

The Housing Act established the low rent public housing program for the purpose of remedying the shortage of decent housing for low income families. Pursuant to the federal public housing program, the Housing Authority of the City of Taylor was established pursuant to Article 1269k of Texas Revised Civil Statutes to construct and administer low rent public housing. Under the annual contributions contract between the THA and the Secretary of HUD, the THA is required to follow the regulations promulgated by HUD and to comply with the terms of the HUD Public Housing Occupancy Handbook (hereinafter referred to as "Handbook").

It is the undisputed practice and policy of the THA to deny admission to public housing to families whose head of household is an unemancipated minor. Under the THA policy, the Plaintiffs were not eligible to be considered for placement in public housing until they had either attained the age of majority or had their legal disabilities removed by the procedures set forth in Tex. Fam.Code Ann. 31.01, *et seq.* THA explains that the purpose for their policy regarding minors is to ensure that any leases entered into with an applicant will be enforceable at law. THA's policy regarding minors has not yet been reduced to writing. The parties also agree on the following additional facts.

Plaintiff Lucinda Caruther was born on June 4, 1974. She is the mother of her son Dwayne Hendricks who was born on September 19, 1990. Her sole source of income is $158.00 each month through the Aid to Families with Dependent Children Program. Ms. Caruther originally applied for an apartment with the THA in July 1991, at which time she was seventeen years old. Her application was denied on the basis of her status as an unemancipated minor. At the time Ms. Caruther applied for an apartment, she had been living apart from her parents for over one year. She then moved back in with her parents. Ms. Caruther, her one year old son, her parents, her grandmother, her sixteen year old brother, and her twelve year old sister all lived in a small three bedroom house. Ms. Caruther has since married and has changed her name to McNeil. Ms. Caruther became a resident of a public housing project under the auspices of the THA on June 15, 1993. Ms. Caruther has attained the age of majority. Ms. Caruther was represented at the onset of this lawsuit by her mother, Lucille Caruther as next friend, because she had not yet attained the age of majority.

Plaintiff Velerk Marshall was born on October 12, 1973. She has one daughter Cassandra Marshall who was born on February

7, 1989. She was expecting another child in February, 1992 who was to born around July 15, 1992. Ms. Marshall's sole source of income is $158.00 each month through the Aid to Families with Dependent Children Program. She originally applied for an apartment with the THA in November 1990, at which time she was seventeen years old. Ms. Marshall's application was denied on the basis of her status as an unemancipated minor. At the time she applied for an apartment, Ms. Marshall had been living apart from her mother for several months. She has not seen her father for many years.

Plaintiff Marshall turned eighteen years of age on October 18, 1991. She immediately reapplied for an apartment with the THA and was offered an apartment shortly after this lawsuit was filed. Because she could not raise the necessary security deposit, the apartment was given to another person, and her application was returned to the waiting list. Ms. Marshall moved into a THA project on May 1, 1993.

Although both Plaintiffs have been admitted into the THA public housing project, THA has refrained from asserting mootness in this action for the reason that it anticipates continuing challenges to its policy of refusing to lease to unemancipated minors.

## IV. DISCUSSION

### A. HOUSING ACT

The Plaintiffs assert that the Defendants have violated the Housing Act by instituting additional eligibility requirements not set forth in the Act. Congress has set forth the eligibility requirements necessary to obtain public housing in 42 U.S.C. §§ 1437a(a)(1), 1437a(b)(3). These eligibility requirements are limited to the language found in the Act.

(1) Dwelling units assisted under this chapter shall be rented only to families who are low-income families at the time of their initial occupancy of such units.

42 U.S.C. 1437a(a)(1). The Housing Act does not address age limitations or emancipation requirements for minors.

▐ Thus, the Plaintiffs argue that the THA, by requiring the head of household to be either emancipated or the age of major-

ity, has made an additional eligibility requirement. States may not alter the eligibility requirements of federal programs. *Carleson v. Remillard,* 406 U.S. 598, 601–02, 92 S.Ct. 1932, 1934–35, 32 L.Ed.2d 352 (1972). More specifically, local public housing authorities do not have the ability to implement additional eligibility requirements to exclude applicants from public housing. *Hann v. Housing Authority of Easton,* 709 F.Supp. 605, 608 (E.D.Pa.1989). Thus, the Plaintiffs contend that the Defendants have violated the Housing Act by creating additional eligibility requirements for public housing applicants.

This Court determines that the THA has not created an additional eligibility requirement by requiring its applicants to be emancipated minors or of majority age. Instead, the THA has attempted to follow the objectives and policies of the Housing Act and HUD. Congress has mandated that the public housing agencies exercise sound management practices in operation of their housing projects in order to assure rental collection. 42 U.S.C. § 1437d(c)(4); *Vandermark v. Housing Authority of City of York,* 663 F.2d 436, 440 (3d Cir.1981). Furthermore, HUD regulations direct that a local public housing authority develop policies that are consistent with its responsibilities as a public body. 24 C.F.R. § 960.204(c)(4).

The *Vandermark* court upheld the York Housing Authority's policy of denying participation in its Section 8 program to individuals who had failed to pay past debts owed to the Housing Authority. *Id.* at 440. The court found that the York Housing Authority's policy promoted the Housing Act's policy of making and enforcing leases with low income families while also promoting the Housing Act's policy of assuring rental collection. *Id.*

Furthermore, a District Court in the Eastern District of Pennsylvania found that a policy prohibiting unemancipated minors from being admitted into the Reading Housing Authority's public housing projects was "consistent with the Housing Act's policy regarding sound and efficient management programs to assure rental collection." *Rivera v. Reading Housing Authority,* 819 F.Supp. 1323, 1330 (E.D.Pa.1993), *aff'd sub nom.*

*Rodriguez v. Reading Housing Authority,* 8 F.3d 961 (3d Cir.1993).

The THA developed its policy of denying admission to unemancipated minors out of concern over the legal enforcement of contracts with minors. Under Texas law, the age of majority is set at 18 years by statute. Tex.Civ.Prac. & Rem.Code Ann. § 129.001 (Vernon 1986). Texas law provides a specific statutory procedure for the removal of the disability of minority and for a minor to become emancipated. *See generally* Tex. Fam.Code Ann. § 31.01, *et seq.* (Vernon 1986). A minor whose disabilities have been removed through this process has the power and capacity of an adult to contract. *See id.* at § 31.07.

■■■■■■ If a minor does not become emancipated, any contract entered into by a minor is voidable under Texas law except for contracts for the reasonable value of necessaries. *Clemmer v. Price,* 59 Tex.Civ.App. 84, 125 S.W. 604, 605 (1910, writ ref'd). The Plaintiffs argue that lodging is considered such a necessary. *Johnson v. Newberry,* 267 S.W. 476 (Tex.Comm'n.App.1924, holding approved). However, the *Johnson* court merely asserts that "lodging [is] one class of necessaries for which a minor *may* be bound." *Id.* at 481 (emphasis added). Thus, whether or not lodging is a necessary is a question of fact to be determined by the jury. *Id.* The THA has no authority or ability to make a case by case determination at the time of contracting as to which minors may consider lodging as a legal necessity.

As stated, the THA has not created an additional eligibility requirement by requiring its applicants to be emancipated minors or of majority age. Instead, the THA has attempted to follow the objectives and policies of the Housing Act and HUD by assuring that all lease contracts entered into by the THA will be legally enforceable under Texas law.

## B. *HUD REGULATIONS*

The Plaintiffs also assert that the Defendants have violated federal HUD regulations. The Plaintiffs allege that the Defendants' policy of denying admission to unemanci-pated minors constitutes a categorical exclusion of minors in violation of 24 C.F.R. § 960.204. The federal regulations on public housing admissions policies provide, in pertinent part, as follows:

(a) In addition to policies and regulations including preferences and priorities established by the PHA for eligibility and admission to its public housing projects pursuant to the Act and the ACC with respect thereto, each PHA shall adopt and implement policies and procedures embodying standards and criteria for tenant selection which take into consideration the needs of individual families for public housing and the statutory purpose in developing and operating socially and financially sound public housing projects which provide a decent home and a suitable living environment and foster economic and social diversity in the tenant body as a whole.

. . . .

(c) Such policies and procedures shall:

(1) Not automatically deny admission to a particular group or category of otherwise eligible applicants (e.g., unwed mothers or families with children born out of wedlock);

24 C.F.R. § 960.204 (1993).

The Plaintiffs further allege that the Defendants' policy regarding minors violates federal regulations requiring consideration of individual circumstances. The federal regulations on public housing tenant selection criteria state, in pertinent part:

(a) The criteria to be established and information to be considered shall be reasonably related to individual attributes and behavior of an applicant and shall not be related to those which may be imputed to a particular group or category of persons of which an applicant may be a member.

24 C.F.R. § 960.205(a) (1993). Thus, the Plaintiffs assert that the Defendants have categorically excluded minors from admission to public housing and have failed to consider the individual attributes of minor applicants.

However, the THA's policy is not violative of HUD regulations or policies. The *Rivera* court upheld an almost identical policy implemented by the Reading Housing Authority.

In *Rivera*, the court found that the Reading Housing Authority's policy requiring a minor to become emancipated in order to enter into a lease does not impute attributes or behavior to minors as a group or category. *Rivera*, 819 F.Supp. at 1330–31. Instead, such a policy is merely the recognition that a contract may not always be held legally enforceable against an unemancipated minor. *Id.* at 1331. The *Rivera* court further found that the Reading Housing Authority policy did not automatically deny admission to minors because minors could obtain housing if they became legally emancipated. *Id.* at 1330. Thus, neither the Reading Housing Authority nor the THA violate HUD regulations 24 C.F.R. §§ 960.205(a), 960.204(c)(1). THA's policy does not impute attributes or behavior to a group or category of people, and the policy does not categorically exclude minors.

The THA's policy does not violate HUD regulations, but rather follows the policies and objectives promulgated by HUD. HUD publishes a Public Housing Occupancy Handbook which serves as a guide to local public housing authorities as to HUD regulations and policies. In § 4–2 of this Handbook, HUD sets forth its policy regarding Admissions:

a. *Policy*

. . . .

(2) The [public housing authority] may set a minimum age for admission to avoid entering into leases which would not be valid or enforceable under applicable law.

. . . .

b. *Discussion*

(1) [public housing authorities] should be aware that many states allow persons who have not reached the age of majority to sign a lease if they have been declared an "emancipated minor." An emancipated minor is often a teenager with a child or a married couple where both husband and wife are under age 18.

HUD Handbook: Admissions 7465.1 REV–2 § 4–2.[1]

Therefore, HUD specifically allows a local housing authority to set a minimum age for admissions if state law might not enforce the lease with the possible exception of allowing admission to emancipated minors. *Rodriguez*, 8 F.3d at 964.

Other HUD publications further promote the policy of allowing admission only to emancipated minors. The HUD comments to the regulations to be codified at 24 C.F.R. § 966.53(f) include in pertinent part:

4.3 *Who May Grieve?*

. . . .

Comment states that the regulations does not define who is an "adult". Comment asserts that in some States an "emancipated minor" can assume responsibility for a tenancy, and that an emancipated minor should not be barred from taking over the lease because of an arbitrary age limitation.

. . . .

In this rule, a technical amendment clarifies that a "tenant" must be an "adult". . . . HUD accepts the definition of contractual capacity as determined by State or local law, but does not seek to impose a uniform Federal definition. If an "emancipated minor" is vested with capacity, as determined by State and local law, to assume the leasehold, then the minor would be deemed an "adult" for purpose of HUD's "tenant" definition.

56 Fed.Reg. 51571 (1991) (comments to regulation to be codified at 24 C.F.R. § 966.53(f), effective November 1991).

Therefore, HUD has interpreted its own regulations as allowing for a state policy prohibiting admission to unemancipated minors. In reviewing the accuracy of an agency's interpretation of its own regulations, the agency's interpretation should be given great deference. *See U.S. v. Larionoff*, 431 U.S. 864, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977). The *Larionoff* court explains that "[i]n construing administrative regulations, the 'ulti-

---

**1.** Section 4–2 was revised by HUD in July, 1991 to deal with applicants with handicaps. The *Rivera* court concluded that the revised version inadvertently left out the previous language regarding minors, and that the previous language still applies. *Rivera*, 819 F.Supp. at 1331 n. 10. HUD fully "intends to continue to apply the language regarding minors." *Rodriguez*, 8 F.3d at 964 n. 3.

mate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulations.'" *Larionoff,* 431 U.S. at 872, 97 S.Ct. at 2155 (quoting *Bowles v. Seminole Rock Co.,* 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945)). *See also Pennzoil Co. v. F.E.R.C.,* 645 F.2d 360 (5th Cir.1981), *cert. denied,* 454 U.S. 1142, 102 S.Ct. 1000, 71 L.Ed.2d 293 (1982) (finding that an agency's interpretation of its own regulations should be given weight and consideration).

When applying the standards set forth in *Larionoff* and *Pennzoil,* HUD's interpretation of its regulations should control in this instance. As discussed above, Texas state law will only recognize contracts by minors for necessaries. As to what constitutes a necessary is to be determined by the courts and juries as factual findings on a case by case basis. Thus, the THA has attempted to avoid legal ambiguity by implementing a policy which ensures that all leases it enters into will be enforceable under state law. Such a policy is completely consistent with HUD regulations.

### C. *THA's POLICY REDUCED TO WRITING*

The Plaintiffs' final cause of action maintains that the THA has violated HUD regulation 24 C.F.R. § 960.204(d) by not reducing to writing its policy of denying admission to unemancipated minors. The Plaintiffs allege that not having the policy reduced to writing has violated their due process rights protected by the fourteenth amendment. The Plaintiffs seek declaratory and monetary relief because they were excluded from THA housing under an unwritten and unpublished policy in violation of the specific requirement of the federal regulations that all tenant eligibility policies be written and posted. HUD regulations allow each local public housing authority to adopt their own policies regarding tenant selection. 24 C.F.R. § 960.204(a). HUD regulations provide in pertinent part that:

(d) Such policies and procedures shall:

(1) Be duly adopted;

(2) Be publicized by posting copies thereof in each office where applications are received and by furnishing copies to applicants or tenants upon request;

(3) Be specific and describe in detail the criteria, standards and preferences to be applied; and

(4) Provide for verification and documentation of information relevant to acceptance or rejection of an applicant.

24 C.F.R. § 960.204(d) (1993).

The Defendants have not denied that the THA policy has not been reduced to writing, and the Defendants have not fully addressed the Plaintiffs' accusation that the THA has violated HUD regulation 24 C.F.R. § 960.204(d). Thus, this Court must conclude that the THA has not reduced to writing its policy of denying admission to unemancipated minors as required by HUD regulations. However, the record shows that each Plaintiff was duly notified after completing their application that they would not be admitted because of their minor status. *See* Caruther Decl. ¶ 4, Marshall Decl. ¶ 4 attached to the Plaintiffs' Motion for Summary Judgment.

█ The Court finds that neither Plaintiff was injured directly by the THA's failure to reduce to writing its policy of not leasing to unemancipated minors. Thus, the Plaintiffs' request for monetary relief is DENIED.

█ The Court also finds that the THA has failed to comply with 24 C.F.R. § 960.204(a) by neglecting to write down and publicize its policy of denying admission to unemancipated minors. Therefore, the Plaintiffs' request for declaratory relief is GRANTED. Thus, it is ORDERED that the THA reduce to writing its policy of denying admission to unemancipated minors in such a manner that the THA is in full compliance with 24 C.F.R. § 960.204(d).